IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 14, 2001

## LEON TERRELL PHILLIPS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 8330     William Charles Lee, Judge**

---

**No. M2000-02383-CCA-R3-PC - Filed June 27, 2001**

---

The petitioner appeals the dismissal of his petition for post-conviction relief from his 1999 guilty plea to and resulting conviction for the attempt to commit first degree murder. He contends that his plea resulted from the ineffective assistance of counsel in that he was not advised that a jury could consider lesser included offenses to the offense charged in the indictment. He also contends that the trial court based the dismissal of his case upon an improper standard. We reverse the judgment of the trial court and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Leon Terrell Phillips.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner was originally charged with especially aggravated robbery based upon his involvement with Mario Starnes in a restaurant robbery during which Starnes shot and seriously injured the owner. Especially aggravated robbery is a Class A felony carrying a standard offender range of fifteen to twenty-five years confinement and allowing for no parole, which renders a defendant eligible for release only after serving eighty-five percent of the sentence. See Tenn. Code Ann. §§ 40-35-112(a)(1), -501(i). Pursuant to a plea agreement, the petitioner pled guilty to the amended charge of attempted first degree murder and received a sentence of thirty years with a thirty-percent release eligibility date.

The petitioner now seeks post-conviction relief from his conviction, claiming that his guilty plea resulted from his attorney's failure to explain to him that a jury could have been instructed on lesser included offenses of especially aggravated robbery. The petitioner asserts that had he known this, he would have gone to trial. The trial court dismissed the case, concluding that the evidence would not justify instructing the jury regarding lesser included offenses. The petitioner contends that this ruling does not address the proper standard for determining whether a reasonable probability exists that he would have gone to trial if his attorney had advised him of the potential for lesser included offenses to be considered by the jury.

Only the petitioner testified at the post-conviction hearing. Regarding the circumstances surrounding the offense, his testimony reflects the following: Mario Starnes asked the petitioner to help him rob a restaurant. The petitioner refused at first, but agreed to help after Starnes asked him again. They agreed that no one would be hurt, only bound with duct tape. However, the petitioner carried a loaded sawed-off shotgun and Starnes had a loaded pistol. They went to the restaurant at night in Starnes's sister's car and parked near the back door of the restaurant. The petitioner wore two sets of clothing, the outer consisting of dark colors. He also wore a toboggan with a pair of dark panty hose over his head, and Starnes wore a ski mask.

After they entered the restaurant, Starnes went to get the money – appearing to know its location – while the petitioner was dealing with some employees. At some point, Starnes had shot into the ceiling. The petitioner made the employees sit on the floor, and he told the victim's wife to approach. However, she went around a corner and returned with her husband, the victim. The victim approached the petitioner and pushed the shotgun away. He pushed the petitioner in the chest and screamed for him to leave. The victim pushed the petitioner out the back door.

The petitioner threw the shotgun down and left the property because he was "through" with it. He removed the toboggan and panty hose, crossed some bank property, and was headed toward a Wendy's restaurant when he looked back and saw Starnes and the victim outside. The petitioner heard or saw a shot or two. The petitioner obtained his share of the robbery proceeds several days later and spent some of it. After his arrest, the petitioner gave a tape-recorded statement of the events to the police.

The petitioner testified that his attorney told him that on the strength of the state's case, she believed that he would probably get a sentence of twenty-four to twenty-five years and serve eighty-five percent. She explained to him how he could be criminally responsible for Starnes's shooting the victim. He also admitted that they discussed the difference between especially aggravated robbery and aggravated robbery and that he told his attorney that he would accept aggravated robbery at eight to twelve years with a thirty-percent release eligibility date. The petitioner also acknowledged that his primary concern was getting a thirty-percent release eligibility date.

The petitioner testified that his attorney did not tell him that the jury could consider lesser included offenses, such as aggravated robbery. He said that if he had known of such a possibility, he would have gone to trial. The petitioner agreed that at the guilty plea hearing, he had told the trial

court that he had been satisfied with his attorney and had discussed all defenses and options with her. He explained, though, that he did not know at that time of her failure to discuss with him lesser included offenses in the context of a jury trial. Upon questioning at the evidentiary hearing by the trial court regarding the pretrial negotiations, the petitioner said that if the state had not offered a reduction he would have gone to trial, noting that it would, at least, cost the state the expense of a trial.

At the end of the petitioner's testimony, the state moved for the case to be dismissed. The trial court concluded that the case hinged upon whether the evidence of the offense would support instructions for lesser included offenses. Upon its determination that the petitioner would not have been entitled to such instructions at a trial, the trial court dismissed the petition. It noted that it was ruling upon a question of law by which it took the evidence in the light most favorable to the petitioner. Thus, no findings of fact were made.

We are constrained to reverse the trial court and remand the case for further proceedings because of the procedure used by the trial court in dismissing this case. First, we believe that the trial court based its ruling upon an inappropriate standard regarding the validity of the petitioner's guilty plea. Second, the trial court has placed us in a posture of taking the petitioner's testimony as true, a telling point because he testified that if he had known of the possibility that the jury could consider lesser included offenses, he would have gone to trial.

The proper standard for determining if the deficient performance of counsel prejudiced the petitioner relative to a guilty plea is whether a reasonable probability exists that, but for counsel's deficient representation, the petitioner would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). In this respect, the petitioner is not required to demonstrate that he likely would have faired better had he gone to trial, although such proof would be relevant to whether the petitioner would have gone to trial. See Hill, 4574 U.S. at 59, 106 S. Ct. at 370.

By rotely accrediting the petitioner's testimony, the trial court necessarily provided that the petitioner had proven prejudice. On the other hand, by dismissing the case when it did, the trial court also left the question of deficient performance open. Under these circumstances, we must remand the case for further evidentiary hearings and the entry of appropriate findings of fact and conclusions of law. The judgment of the trial court is reversed and the case is remanded for further proceedings.

_____
JOSEPH M. TIPTON, JUDGE

-3-